WELLS, J.,
dissenting.
I dissent.
First, the majority opinion does not answer the question that the district court certified to this Court. That question is:
CAN THE DOCTRINE OF FRAUDULENT CONCEALMENT APPLY TO TOLL THE STATUTE OF LIMITATIONS IN A NEGLIGENCE ACTION?
S.A.P. v. Dep’t of Health & Rehabilitative Servs., No. 95-00252-CA at 2 (Fla. 1st DCA order filed Dec. 15, 1999). Second, the majority’s opinion does not decide any of the issues which were decided by the district court. The district court held that: (1) fraudulent concealment tolled the stat *1106 ute of limitations as to a claim against a State agency brought under section 768.28, Florida Statutes (1993); (2) this action should be allowed to proceed because of the allegations that during S.A.P.’s minority “there was no one acting on her behalf, no friend or guardian, who could have filed suit on her behalf’; and (3) section 95.051(1)(h), Florida Statutes (1993), is not applicable to S.A.P.’s case. S.A.P. v. State Dep’t of Health & Rehabilitative Servs., 704 So.2d 583, 585-87 (Fla. 1st DCA 1997).
If the majority were to answer the certified question and decide the issues that were decided by the district court, contrary to the majority’s conclusion, the result would have to be adverse to S.A.P. A plain application of the applicable statutes, this Court’s precedent, and the doctrine of sovereign immunity dictate that the question certified be answered NO and that the district court’s decision be quashed.
In direct answer to the question, which is whether fraudulent concealment tolls the statute of limitations in a negligence action, the answer is dictated by the following statute:
No disability or other reason shall toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law.
§ 95.051(2), Fla. Stat (1993) (emphasis added). This statute is expressly very broad, applying to “any statute of limitations.” Id. Because fraudulent concealment is not one of the exceptions listed in section 95.051(2), this provision alone requires that the certified question be. answered in the negative. This Court’s precedent is that courts will not write exceptions into statutes when the Legislature has not. See Federal Ins. Co. v. Southwest Florida Ret. Ctr., Inc., 707 So.2d 1119, 1121 (Fla.1998).
The fact that this negligence action was brought against a State agency provides an additional basis as to why the certified question has to be answered NO, and the district court’s decision should be quashed. The Florida Constitution states in article X, section 13:
Suits against the state. — Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.
Section 768.28(1), Florida Statutes (1993), implemented this constitutional provision, stating in its first sentence:
In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act.
(Emphasis added.) Section 768.28(12)[17] expressly specified:
Every claim against the state or one of its agencies or subdivisions for damages for a negligent or wrongful act or omission pursuant to this section shall be forever barred unless the civil action is commenced by filing a complaint in the court of appropriate jurisdiction within 4 years after such claim accrues ....
(Emphasis added.) The history of our common law, clearly predating Florida becoming a state,[18] is that the State as a sovereign cannot be sued in tort except to the extent it waives by statutory law its common law sovereign immunity. This Court has repeatedly made this clear. Ob *1107 viously, the statutes quoted above represent this statutory waiver. In State ex rel. Florida Dry Cleaning & Laundry Board v. Atkinson, 136 Fla. 528, 188 So. 834, 838 (1938), this Court held:
[N]o suit may be maintained against [a state instrumentality] ... except by consent of the State, which consent may only be effectuated by legislative Act. Such consent can be extended to operate no further than the limitation, if any, ivhich may be prescribed by the legislature in its grant of consent. With the wisdom or policy of a legislative Act limiting the scope of the State’s consent to be sued, the courts have no voice.
(Emphasis added.) Moreover, this Court has made equally clear that statutes waiving sovereign immunity are to be strictly construed. In Spangler v. Florida State Turnpike Authority, 106 So.2d 421 (Fla.1958), a case preceding section 768.28, this Court set out the principle applicable to the earlier constitutional provision pertaining to sovereign immunity. Writing for the Court, Justice Thornal said:
Article III, Section 22, Florida Constitution, F.S.A., authorizes the Legislature to provide by general law for the bringing of a suit against the State. This, of course, applies in equal measure to all state agencies. Inasmuch as immunity of the state and its agencies is an aspect of sovereignty, the courts have consistently held that statutes purporting to waive the sovereign immunity must be clear and unequivocal. Waiver will not be reached as a product of inference or implication. The so-called ‘waiver of immunity statutes’ are to be strictly construed. This is so for the obvious reason that the immunity of the sovereign is a part of the public policy of the state. It is enforced as a protection of the public against profligate encroachments on the public treasury. ■
Id. at 424 (emphasis added).
Our adherence to strict application of the waiver of sovereign immunity on behalf of the State is in accord with the federal courts’ adherence to strict construction in respect to the waiver of sovereign immunity under the Federal Tort Claims Act (FTCA).[19] In Allgeier v. United States, 909 F.2d 869, 873 (6th Cir.1990), the court stated:
[S]ueh considerations are insufficient to override our duty to construe strictly any waiver by the United States of its sovereign immunity. See United States v. Kubrick, 444 U.S. 111, 117-18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (“we should not take it upon ourselves to extend the waiver beyond that which Congress intended”). On the basis of this well-established principle, courts have declined to extend the limited waiver period for tort claims in [28 U.S.C.] section 2401(b) in interpreting the language of that statute, see, e.g., Kubrick; Vernell [ex rel. Vernell v. U.S. Postal Service], 819 F.2d [108] at 111-12 [2nd Cir.1975], and also in interpreting [Federal Rule of Civil Procedure] 15(c).
In Mann v. United States, 399 F.2d 672, 673 (9th Cir.1968), the court said:
The Federal Tort Claims Act provides, in part, as follows: “A tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues.... ” 28 U.S.C. § 2401(b). Institution of suit within the two-year period is a jurisdictional requirement. Powers v. United States, 390 F.2d 602 (9th Cir.1968); Humphreys v. United States, 272 F.2d 411, 412 (9th Cir.1959). The time limita *1108 tion is not tolled during a claimant’s minority. Brown v. United States, 353 F.2d 578 (9th Cir.1965); Pittman v. United States, 341 F.2d 739 (9th Cir.), cert. denied, 382 U.S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965).
Mann argues that the Government may be prevented from taking advantage of this defense in “a proper case.” He points to Osbourne v. United States, 164 F.2d 767 (2d Cir.1947), wherein the Government was not allowed the limitations defense because the plaintiff, a seaman proceeding under the Jones Act, had been denied access to the courts by reason of his imprisonment by the enemy during time of war. Specifically, Mann relies upon his status as an Indian, alleging that he was a ward of the Government and, as such, was “entitled to the care and protection due from a guardian to his ward.”
Assuming, arguendo, the validity of the Osbourne decision, which was clearly limited to the wartime situation, we are nevertheless convinced that Congress has left no room for an exception to be made in the present case. Although exceptions to the applicability of the limitations period might occasionally be desirable, we are not free to enlarge that consent to be sued which the Government, through Congress, has undertaken so carefully to limit. See United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The limitations period established by Congress “must be strictly observed and exceptions thereto are not to be implied.” Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).
(Emphasis added.)
Following these teachings in respect to both the Florida and the federal waivers of sovereign immunity leads to the inescapable conclusion that the section 768.28(12) limitation of four years to pursue a claim is not, as the majority labels it, a “conventional” statute of limitations. This limitations period is the extent of time that the Florida Legislature has determined that sovereign immunity is waived. The plain, unequivocal language that “every claim” must be filed within four years of accrual leaves no room for construction or deflection by the courts. § 768.28(12), Fla. Stat. (emphasis added). To hold that this limitation on the waiver of immunity may be tolled or deflected by equitable estoppel fails to account for the fact that this limitations period is an integral part of the waiver of sovereign immunity and ignores this plain, unequivocal statute. Moreover, this holding writes out of section 768.28(1) the additional mandate that sovereign immunity is waived “only to the extent specified in this act.”
I do not agree that the time limitation provision in section 768.28(13), Florida Statutes, is in any way affected by the statement in section 768.28(5), which states, “The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances.” Rather, subdivision (5) is intended to make clear the types of actions which may be brought against the State. But every such action must be within the requirement of subdivision (13) because that provision says “every claim” is otherwise barred. The waiver of sovereign immunity is solely a prerogative of the legislative branch of government. Because this waiver is solely a prerogative of the legislative branch and not the judicial branch, I believe the Court is without authority to exercise judicial equity powers to extend the waiver of sovereign immunity beyond that which the Legislature has expressly granted.
Even if equitable estoppel was a doctrine which could be used to extend the *1109 Legislature’s waiver of sovereign immunity, that doctrine has no bearing here. Morsani is totally distinguishable on its facts in that it applied equitable estoppel to circumstances where the defendant made inducements to the plaintiff to forbear the bringing of the action that was later claimed by the defendant to be barred. That is the appropriate context for applying the doctrine of equitable es-toppel. I do agree with the majority’s statement that the doctrines of tolling and equitable estoppel “are as different as apples and oranges.” Majority op. at 1096. In fact, the district court decided this case on the basis of tolling and did not refer to the doctrine of equitable estoppel, nor does the certified question refer to equitable tolling.
I note additionally that the law of Florida generally has been that equitable estop-pel can effectively be applied against the State only in rare and exceptional circumstances. See North Am. Co. v. Green, 120 So.2d 603, 610 (Fla.1959) (“The instances are rare indeed when the doctrine of equitable estoppel can effectively be applied against state action.”); see also State Dep’t of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981). I know of no decision out of this Court involving a tort claim that has applied equitable estoppel against the State. The rare and exceptional circumstances in which equitable estoppel has been allowed are instances in which the State has made affirmative representations relied upon by parties in contractual or taxation situations. Equitable estoppel can never be used against the State when the claimant alleges unauthorized acts by State officers, as was alleged in the instant case. The First District Court of Appeal clearly stated these principles in Greenhut Construction Co. v. Henry A. Knott, Inc., 247 So.2d 517, 524 (Fla. 1st DCA 1971):
The law of this state generally recognizes the proposition that although the sovereign may under certain cireum-stances be estopped, such circumstances must be exceptional and must include some positive act on the part of some officer of the state upon which the aggrieved party had a right to rely and did rely to its detriment. U’nder no circumstances may the state be estopped by the unauthorized acts or representations of its officers.
(Emphasis added.)
Because I conclude that S.A.P. cannot overcome the four-year limitation in section 768.28(12), on either the basis of tolling or equitable estoppel, I move on to the second holding of the district court below: that S.A.P.’s action can proceed despite the four-year limitation because of her allegations that no one was acting on her behalf during her minority. See S.A.P., 704 So.2d at 585. Again, the district court’s decision on this issue must be quashed because it is in conflict with sections 95.051(2) and 768.28(12) and the longstanding precedent of this Court. First, section 95.051(2) specifically prohibits tolling for any statute of limitations except as specified, and the allegations here do not come within the specified exceptions. Second, even if the first reason was not itself dispositive, what I have previously stated concerning the waiver of sovereign immunity also applies to this issue. The Legislature did not waive sovereign immunity for longer than four years even under the alleged circumstances involving S.A.P.
Third, this Court held in Slaughter v. Tyler, 126 Fla. 515, 171 So. 320 (1936), overruled in part on other grounds, Manning v. Serrano, 97 So.2d 688 (Fla.1957), that “[tjhere is no statute in force in this state suspending the statute of limitations on personal actions in account of the minority of the claimant and none has existed since 1872.” Id. at 323. The district court correctly recognized in its third holding that no such statute was passed until 1993, *1110 and therefore section 95.051(1)(h) has no applicability to S.A.P.’s case. See S.A.P., 704 So.2d at 587. Finally, in Department of Transportation v. Soldovere, 519 So.2d 616, 617 (Fla.1988), this Court held:
A cause of action for the negligence of another occurs at the time the injury is first inflicted. See Seaboard Air Line Railroad Co. v. Ford, 92 So.2d 160 (Fla.1956) 35 Fla. Jur.2d Limitations and Laches § 48 (1982). This rule applies whether the cause of action is against a private party or the state.
(Emphasis added.) The operative complaint in this case alleges that S.A.P.’s injuries were known “on or about October 20, 1979.” The express language of section 768.28(12) states unequivocally: “Every claim against the state ... shall be forever barred unless the civil action is commenced ... within four years after such claim accrues.” (Emphasis added.) Thus, despite S.A.P.’s allegations that no one was acting on her behalf during her minority, this claim is barred because by the allegations of the complaint the cause of action accrued in October 20, 1979.
S.A.P. presents a sympathetic circumstance, particularly in light of present news reports concerning the State’s agency caring for children. However, since the waiver of sovereign immunity is a power conferred by Florida’s Constitution upon the legislative branch, it is my belief that it is the Legislature which must act if claims arising so long ago are to be compensated by this State. S.A.P. does have the alternative of seeking a claims bill before the Legislature. See, e.g., Gamble v. Wells, 450 So.2d 850, 852 (Fla.1984). It should be the Legislature, as the constitutional guardian of the State treasury, which makes the decision on a claim that accrued after the period of time that the Legislature empowered Florida courts to decide claims against the State by its waiver of sovereign immunity.
HARDING, Senior Justice, concurs.

. This subdivision was subsequently renumbered to be section 768.28(13). See § 768.28(13), Fla. Stat. (1995).

. The Florida Legislature’s adoption of the common law as it existed prior to Florida's statehood is codified in section 2.01, Florida Statutes (1993).

. See 28 U.S.C. §§ 2671-2680 (2000) (establishing legal mechanism for compensating persons injured by negligent or wrongful acts of federal employees committed within scope of their employment).